ORIGINAL

Approved: _Eli M_____
ELI J. MARK
Assistant United States Attorney

Before: THE HONORABLE FRANK MAAS
Chief United States Magistrate Judge
Southern District of New York

15 MAG 4508

U.S. DISTRICT COURT
FILED
DEC 16 2015
S.D. OF N.Y.

DOC #_____

------------------------------------ X
UNITED STATES OF AMERICA : SEALED COMPLAINT
:
-v- : Violation of 18 U.S.C.
: § 1349
DAILE FERGUSON, :
  a/k/a "Normandale Ferguson," : COUNTY OF OFFENSE:
: BRONX
            Defendant. :
:
------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

KRYSTOFOR PROEV, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Treasury Inspector General for Tax Administration ("TIGTA"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

1. From at least in or about 2009 up to and including at least 2014, in the Southern District of New York and elsewhere, DAILE FERGUSON, a/k/a "Normandale Ferguson," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that DAILE FERGUSON, a/k/a "Normandale Ferguson," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose

of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a Special Agent with TIGTA and I have been personally involved in the investigation of this matter. My duties and responsibilities include the investigation of fraudulent activities and crimes that affect tax administration, such as bribery of public officials and impersonation of Internal Revenue Service employees. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offense cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

The Jamaican Lottery Telemarketing Fraud Scheme

4. Based on my personal participation in this investigation, I became aware that the scheme under investigation was designed to obtain money from elderly victims by informing them that they had won substantial cash prizes in an international sweepstakes lottery, but that in order to claim these prizes, they first needed to pay money in fees and taxes. These victims were contacted by telephone, fax, and by email, requesting payment of purported fees and taxes on these supposed winnings. In fact, there was no sweepstakes lottery and the victims never received any cash prize, even after victims sent cash and checks totaling more than hundreds of thousands of dollars to conspirators in the United States and in Jamaica.

5. Based on my conversations with an employee of the Department of Homeland Security ("DHS") and review of DHS records, I have learned, among other things, that on or about August 30, 2007, DAILE FERGUSON a/k/a "Normandale Ferguson," the defendant, entered the United States from Jamaica using a Jamaican passport.

6. Based on my review of bank and money transmitter records, I have learned that from on or about 2009 through on or about 2014 DAILE FERGUSON a/k/a "Normandale Ferguson," the

2

defendant, received more than $430,000 from approximately 87 different individuals throughout the United States. Of those 87 individuals, approximately 43 are older than seventy years' old and approximately 59 are older than sixty years' old, based on a review of records from a law enforcement database.

7. I and other law enforcement agents have spoken with several individuals who transferred money to DAILE FERGUSON a/k/a "Normandale Ferguson". These victims have each stated, in substance and in part, that they were contacted by individuals who stated, in substance and in part, that the victim had won a sweepstakes and that the victim had to pay taxes and other charges related to the sweepstakes before the winnings could be transmitted to them. Subsequently, the victims were each contacted by various individuals purportedly affiliated with the sweepstakes, who requested the victims to make payments to specified individuals. As a result of these efforts, the victims sent money to several individuals, including FERGUSON.

8. Based on my review of bank records and conversations with bank employees, I have learned that DAILE FERGUSON a/k/a "Normandale Ferguson," the defendant, was notified on multiple occasions that money he received was fraudulently obtained. For instance, on or about February 25, 2013, a Fraud Recovery Investigations division of a bank at which FERGUSON had an account ("Bank-1") sent FERGUSON a notification that a $25,000 check he attempted to deposit in FERGUSON's account at Bank-1 was a "fraudulent check."

9. I believe Ferguson Email Account-1 was used by DAILE FERUGSON a/k/a "Normandale Ferguson," the defendant, because he provided this email account in connection with a bank account in his name and because of the contents of the emails I have reviewed pursuant to a judicially authorized search warrant.

10. Based on my review of Ferguson Email Account-1 and other email accounts used by the conspirators, I have learned, among other things, that:

    a. The conspirators, including DAILE FERGUSON, a/k/a "Normandale Ferguson," the defendant, used email to communicate about the scheme, including to purchase lists of the contact information for potential victims and to exchange information about payments made by victims.

    b. On or about July 20, 2011, the user of Ferguson Email Account-1, who I believe to be FERGUSON, emailed a co-conspirator ("CC-1") a photograph of a $9,000 certified check,

3

from a victim, that was made out to "Daile Ferguson". Based on my review of bank records, I have learned that the next day, FERGUSON opened two new bank accounts and attempted to deposit separate $9,000 certified checks made out to "Daile Ferguson" into each of those bank accounts; however, after the bank learned about the fraud, the bank stopped payment and returned the deposits.

### Victim-1

11. I have spoken with an individual ("Victim-1"), and have reviewed documents provided by Victim-1. From Victim-1, I have learned the following, among other things:

    a. Victim-1 resides in New York.

    b. In or about February 2012, an individual identifying himself as "Marlon Blair" contacted Victim-1 on Victim-1's telephone number, and stated, in substance and in part, that Victim-1 had won $1.5 million in a sweepstakes.

    c. From that point forward, Victim-1 received several phone calls demanding that Victim-1 make payments in order to receive the lottery winnings. These calls, in part, instructed Victim-1 to make transfers of money to certain identified individuals.

    d. Victim-1 also received a letter purporting to be from the "American Gaming Board" regarding his purported sweepstakes winnings.

    e. As a result of the phone calls and letter Victim-1 received, Victim-1 sent approximately $80,000, mostly through cashier's checks, to individuals, including a "Daile Ferguson."

12. Based on my review of bank records in the name of DAILE FERUGSON a/k/a "Normandale Ferguson," the defendant, I have learned, among other things, that: between in or about June 2012 and July 2012, three cashier's checks or official checks from Victim-1, totaling approximately $47,000, were deposited into FERGUSON's bank accounts, and the cashier's checks were each made payable to "Daile Ferguson."

### Victim-2

13. I have spoken with an individual ("Victim-2"), and have reviewed documents provided by Victim-2. From Victim-2, I have learned the following, among other things:

a.   Victim-2 resides in Pennsylvania.

b.   In approximately 2012, Victim-2 received a telephone call from an individual who represented, in substance and in part, that Victim-2 had won a sweepstakes and had to pay taxes and other charges related to that sweepstakes before the winnings would be transmitted to Victim-2.

c.   Victim-2 subsequently received a number of phone calls from various individuals purporting to be related to the "American Gaming Board" and/or another sweepstakes, and requesting that Victim-2 make payments.

d.   One of the individuals that contacted her identified himself as "John Peterson" and he instructed Victim-2 to send money to "Daile Ferguson."

e.   As a result of the phone calls Victim-2 received, Victim-2 sent over $150,000, including through cashier's checks, money orders and traveler's checks, to individuals, including "Daile Ferguson."

14.   Based on my review of bank records in the name of DAILE FERUGSON a/k/a "Normandale Ferguson," the defendant, I have learned, among other things, that: between in or about November 2012 and February 2013, three cashier's checks from Victim-2, totalling approximately $66,500, were deposited into FERGUSON's bank accounts, and that two of the checks were made payable to "Daile Ferguson," while the other two were made payable to "Daile Fergason."

### Victim-3

15.   I have spoken with an individual ("Victim-3"), and have reviewed documents provided by Victim-3. From Victim-3, I have learned the following, among other things:

a.   Victim-3 resides in Connecticut.

b.   In approximately 2010, Victim-3 was contacted by telephone from an individual who purportedly was from "Global International" and who represented, in substance and in part, that Victim-3 had won a sweepstakes and had to pay taxes and other charges related to that sweepstakes before the winnings would be transmitted to Victim-3.

c.   In approximately 2010, Victim-3 received a letter purporting to be from a "Tax Return Officer" with the "Internal Revenue Service." That letter stated that Victim-3 had won

$750,000, which "was processed through the I.R.S. office" and that the I.R.S. "has also verified and has recorded the payment." The letter also stated that in order to collect the payment insurance fees needed to be paid.

        d. Victim-3 also received several phone calls from various individuals, including from an individual who identified herself as purportedly working for the IRS, demanding that Victim-3 make payments in order to receive the supposed winnings.

        e. As a result of the phone calls and emails Victim-3 received the conspirators, Victim-3 sent approximately $20,000, through various means, including through Western Union and MoneyGram, to a variety of individuals, including to "Daile Ferguson."

    16. From my review of records obtained from Western Union and MoneyGram, I have learned, among other things, that between April 2010 and October 2010, Victim-3 transferred approximately $2,870 from Connecticut via Western Union and MoneyGram to "Daile Ferguson" in Bronx, New York and Yonkers, New York.

### Ferguson's Admissions

    17. I and another law enforcement agent have interviewed DAILE FERGUSON, a/k/a "Normandale Ferguson," the defendant, near his residence in Bronx, New York. After being advised of his Miranda rights and waiving those rights, FERGUSON related the following, among other things:

        a. FERGUSON claimed that in approximately 2011, he began collecting money from individuals located in the United States on behalf of FERGUSON's acquaintances in Jamaica, including CC-1, and that he kept a portion of the money he collected.

        b. FERGUSON claimed that he had heard that at least one of the individuals on whose behalf he collected money, CC-1, was involved in a lottery scheme.

        c. FERGUSON admitted that "something felt wrong" and "not right" about collecting the money.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of DAILE FERGUSON, a/k/a "Normandale Ferguson," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

KRYSTOFOR PROEV
Special Agent
United States Department of Treasury
Inspector General for Tax Administration

Sworn to before me this
16th day of December, 2015

THE HONORABLE FRANK MAAS
Chief United States Magistrate Judge
Southern District of New York