

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 6, 2016

**BY ECF and EMAIL**
Hon. Kimba M. Wood
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>United States v. Daile Ferguson</u>, 16-cr-131 (KMB)

Dear Judge Wood:

    The Government respectfully submits this letter in advance of the defendant Daile Ferguson's sentencing in this matter, which is currently scheduled for October 11, 2016 at 4:00 p.m. On May 19, 2016, the defendant pled guilty to one count of conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349. Under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), the parties and the United States Probation Department ("Probation") agree that the guidelines sentencing range is 33 to 41 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government respectfully submits that the offense warrants a sentence with the Stipulated Guidelines Range.

## Background

### A.    The Offense Conduct

    From approximately 2009 to approximately 2014, defendant Daile Fergusons, along with coconspirators who were based mainly out of Jamaica, participated in an advanced fee scheme perpetrated upon victims (many of whom were elderly) in the United States. Victims were contacted by telephone, fax, and letter by individuals in the United States as well as in Jamaica, and were falsely informed that they had won a large sum in the lottery, but that in exchange, the victims were required to transfer a sum of money, representing taxes owed upon their fictitious lottery winnings, in advance of receipt of their prize. After the initial contact, those who perpetrated the scheme would continue to contact and harass the victims through frequent phone calls, emails, faxes, and letters in an effort to coerce the victims into paying the fraudulent advanced fees. These letters and calls at times impersonated government agencies (including the Internal Revenue Service, the Federal Bureau of Investigation, and the Department

of Homeland Security) and threatened that the victims would be committing federal offenses if they did not pay the fees. As a result, victims transferred substantial sums of money to the conspirators, including to Daile Ferguson, the defendant. These transfers occurred through various means, including over Western Union wire transfers, and cashier's checks and prepaid debit cards sent to Daile Ferguson (or slight variants upon that name). *See* Presentence Report ("PSR") ¶¶ 8-21.

Daile Ferguson's main role in the conspiracy was to receive funds in New York from victims. Ferguson would keep a portion of these funds, and transmit the remainder to his coconspirators in Jamaica. The Government's investigation to date has identified approximately $439,386.79 in funds that were transmitted from 89 victims to Daile Ferguson. The loss estimate in this case is based upon bank and Western Union wire records that bear the name Daile Ferguson or its equivalent, and excluded funds that were sent to Ferguson's co-conspirators.

    **B.**    **Procedural History**

On or about December 22, 2015, Daile Ferguson was arrested pursuant to a Complaint, charging the defendant with participating in a wire fraud conspiracy, in violation of 18 U.S.C. § 1349. Ferguson was presented before the Honorable Henry B. Pitman, who granted the defendant release on bail. On or about February 17, 2016, a grand jury in the Southern District of New York returned an indictment charging the defendant with the same count. On or about May 19, 2016, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement before the Honorable Barbara C. Moses, United States Magistrate Judge.

In the Plea Agreement to which Ferguson pleaded guilty, the Government and the defendant stipulated that the Guidelines range of 33 to 41 months' imprisonment should apply to the defendant's conduct, derived from a criminal history category of I and an adjusted offense level of 20.

## Discussion

    **A.**    **The Applicable Law**

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

Honorable Kimba M. Wood
October 6, 2016
Page 3 of 5

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).   To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

  B.     Analysis

In light of the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant, the Government respectfully submits that a sentence of 33 to 41 months' imprisonment—as stipulated to in the Plea Agreement between the parties would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.  Application of the Section 3553(a) factors in this case militate in favor of such a sentence.

A term of imprisonment is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). As explained above, over the course of approximately five years, Ferguson and his co-conspirators managed to defraud various victims—many of whom were elderly or otherwise vulnerable individuals—from across this country of over $439,000 in funds.  They did so in a coercive and

harassing manner, with frequent and incessant phone calls threatening them in many different ways if the victims did not comply with their demands. As is illustrated in the victim impact statements that were provided for the Court's consideration, many of these victims suffered serious financial strain as a result of the fraud, from loss of retirement funds to homelessness. Of course, the harm to the victims was not just financial. These victims also suffered an emotional and psychological toll from the crime. For these reasons as well, an incarceratory sentence is appropriate in this case not only to reflect the seriousness of Ferguson's conduct, and to provide just punishment for his actions, but also to ensure that there is both specific deterrence for Ferguson and general deterrence for others against these types of crimes. *See* 18 U.S.C. § 3553(a)(1), (a)(2).

In his submission, Ferguson makes two main arguments. First, Ferguson asserts that the sentence should reflect his relatively limited role in the conspiracy. *See* Ferguson Submission at 3-4. It is true that Ferguson was not the mastermind behind this conspiracy, and instead appeared to receive instruction from other coconspirators. But these facts are already reflected in the Guidelines calculations as set forth by the Plea Agreement. There are no upward role adjustments for leadership or managerial role, *see* U.S.S.G. § 3B1.1, and the loss amount attributable to Ferguson was not that of the entire scheme, but rather limited to just those checks, wires, and prepaid debit cards that were sent to him and which bore his name. The loss amount did not include the hundreds of thousands of dollars that were sent by victims to others who played roles similar to Ferguson in the scheme. There can be no dispute that Ferguson understood the full scope of the scheme as it impacted these particular victims, because these funds were sent to him, and then he turned around and transmitted them to his coconspirators in Jamaica, after pocketing a sum for himself.[1] Moreover, as Ferguson undoubtedly himself understood, his role was crucial to the success of the scheme. Although, Ferguson now suggests he participated in the scheme because of fear, when he was interviewed by law enforcement post-arrest he stated, in substance and in part, that he collected the proceeds of the scheme as a favor to a co-conspirator as well as for financial gain. Ferguson also told law enforcement that at the time he was arrested he had stopped collecting the money from the lottery scheme and Ferguson did not suggest that he suffered any threats or physical harm as a result.

Second, Ferguson explains his background and personal history, including the sympathetic events that led to his emigration to the United States. There can be no dispute that these facts, including discrimination in Jamaica due to his sexual orientation, may be considered by the Court in fashioning an appropriate sentence, and in assessing the individualized circumstances regarding the defendant under 18 U.S.C. § 3553(a). Nevertheless, they do not serve to excuse the defendant's critical role in perpetrating this fraud against innocent victims in

---

[1] The Government is unable to determine the exact share of the proceeds that the defendant received. The defendant when interviewed post-arrest stated, in substance and in part, that at most on at least one occasion he kept $500, but that he probably was told that could keep more at times.

the United States, and his choice to do so only shortly after arriving in this country and over a period of many years. It is worth noting that Probation, in recommending a 33-month sentence, declined to endorse a variance or departure from its own calculated Guidelines range, which suggests that these facts, while somewhat mitigating, did not serve to assuage Probation's concerns regarding this defendant and the appropriate sentence in this case. *See* PSR at 19 ("Taking into account the sentencing factors set forth in 18 USC 3553(a) and (b), given the length of time that the defendant was involved in the instant offense, his role in the offense, and his medical diagnosis, we believe that a sentence of 33 months' imprisonment is sufficient in this matter to satisfy the sentencing objectives of just punishment and deterrence.").

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines sentence, as such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    /s/
Eli J. Mark
Assistant United States Attorney
(212) 637-2431

cc: Anthony Strazza, Esq. (*via ECF*)
    Counsel for Daile Ferguson